**REDACTED**

Unsealed 1/26/22

AO 102 (01/09) Application for a Tracking Warrant

SEALED

## UNITED STATES DISTRICT COURT
for the
District of Delaware



FILED
MAY 21 2021
US DISTRICT COURT
DISTRICT OF DELAWARE

In the Matter of the Tracking of
*(Identify the person to be tracked or describe the object or property to be used for tracking)*
A BLACK CHEVROLET SILVERADO BEARING LICENSE PLATE NUMBER C51986 AND VIN # 2GCEK19T941153005

) ) ) ) ) ) )

Case No. 21-165M

### APPLICATION FOR A TRACKING WARRANT BY TELEPHONE OR OTHER ELECTRONIC MEANS

I, a federal law enforcement officer or attorney for the government, have reason to believe that the person, property, or object described above has been and likely will continue to be involved in one or more violations of 21 U.S.C. § §841(a)(1) & (b)(1)(c). Therefore, in furtherance of a criminal investigation, I request authority to install and use a tracking device or use the tracking capabilities of the property or object described above to determine location. The application is based on the facts set forth on the attached sheet.

- ☑ The person, property, or object is located in this district.
- ☐ The person, property, or object is not now located in this district, but will be at the time of execution.
- ☐ The activity in this district relates to domestic or international terrorism.
- ☐ Other:

The tracking will likely reveal these bases for the warrant under Fed. R. Crim. P. 41(c): *(check one or more)*

- ☑ evidence of a crime;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ a person to be arrested or a person who is unlawfully restrained.

☑ I further request, for purposes of installing, maintaining or removing the tracking device, authority to enter the following vehicle or private property, or both:
The driveway of 9276 South Mayhew Drive, Lincoln, DE 19960

☑ Delayed notice of 30 days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Christopher Thiel*
*Applicant's signature*

SA Christopher M. Thiel, DEA
*Applicant's printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: May 21, 2021

*Judge's signature*

City and state: Wilmington, Delaware

Honorable Jennifer L. Hall, U.S. Magistrate Judge
*Printed name and title*

SEALED



FILED
MAY 2 1 2021
US DISTRICT COURT
DISTRICT OF DELAWARE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

IN THE MATTER OF THE TRACKING OF BLACK CHEVROLET SILVERADO BEARING LICENSE PLATE NUMBER C51986 AND VIN # 2GCEK19T941153005

Case No. 21-165M

Filed Under Seal

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Christopher M. Thiel, being first duly sworn, hereby depose and state as follows:

#### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 3117 to authorize the installation and monitoring of a tracking device on a Black Chevrolet Silverado bearing license plate number C51986 and vehicle identification number 2GCEK19T941153005 ("the SUBJECT VEHICLE"). Based on the facts set forth in this affidavit, I believe that the SUBJECT VEHICLE is presently being used in furtherance of the distribution of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) and that there is probable cause to believe that the installation of a tracking device on the SUBJECT VEHICLE and use of the tracking device will lead to evidence, fruits, and instrumentalities of the aforementioned crimes as well as to the identification of individuals who are engaged in the commission of those and related crimes.

2. I am a Special Agent with the Drug Enforcement Administration, and have been since April 2019. I attended the new agent training program at the DEA Academy in Quantico, Virginia. I have received on-the-job training in narcotics trafficking, conspiracy, and distribution investigations. I have participated in certain aspects of drug investigations, including the use of confidential sources and undercover officers, physical surveillance, electronic surveillance, the

execution of search and arrest warrants, the use of court-ordered intercepts of wire communications and investigative interviews. Since September 2020, I have been assigned to the Dover, Delaware Post of Duty of the Philadelphia Division of the DEA, where I have been responsible for investigating drug, violent crime, and criminal enterprise offenses. During my career in law enforcement, I have become familiar with the methods and techniques associated with the distribution of narcotics, the laundering of drug proceeds, and the organization of drug conspiracies. I have participated in numerous search warrants, which has led to the collection of valuable evidence, fruits, and instrumentalities of drug trafficking.

3.  From my training and experience, a GPS tracker allows you to be able to gather valuable information from a criminal organization. Patterns can be derived from tracking the movement of the vehicle. These patterns can identify routines that the vehicle does. Crucial locations can be identified by using a GPS tracker. Some of these locations are, but are not limited to, stash houses, associates' residences, drop off and pick up locations for narcotics and money, and confirming locations an individual goes to before and after narcotic transactions, meetings and after money exchanges.

4.  The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

### PROBABLE CAUSE

*Background*

5.  Since February 18, 2021, the DEA has been investigating Guadalupe TORRES regarding the large-scale distribution of methamphetamine. An undercover officer ("UC") has

2

met with TORRES and purchased methamphetamine from TORRES while TORRES utilized the SUBJECT VEHICLE. In addition, I have confirmed through an electronic database that TORRES is the owner of the SUBJECT VEHICLE. The investigation has confirmed that TORRES is in the business of trafficking of substantial amounts of methamphetamine and uses the SUBJECT VEHICLE in furtherance of his drug trafficking activities.

*February 18, 2021 Undercover Purchase Involving TORRES Using SUBJECT VEHICLE*

6. On February 18, 2021, the UC met with a member of TORRES's drug trafficking organization, Porfirio JIMENEZ-ARIZMENDI. At that meeting, JIMENEZ-ARIZMENDI sold the UC seven (7) ounces of methamphetamine for $7,000.00 and fronted the UC an additional three (3) ounces of methamphetamine, for a total of 10 ounces. At that meeting, JIMENEZ-ARIZMENDI also introduced the UC to his supplier, TORRES. TORRES met the UC using the SUBJECT VEHICLE. During that meeting, the UC and TORRES negotiated a price of $9,000.00 for eight (8) ounces of methamphetamine.

*March 4, 2021 Undercover Meeting with TORRES Discussing Drug Trafficking*

7. On March 4, 2021, TORRES, using the SUBJECT VEHICLE, drove to meet with the UC in person to discuss future narcotic transactions. TORRES met with the UC in Lincoln, DE and discussed bulk pricing for methamphetamine. During the conversation with TORRES, the UC stated that TORRES received the shipments of methamphetamine from family in California. The methamphetamine is shipped to an address that is carefully watched by associates of TORRES until the package can be picked up. TORRES constantly receives updates on the location of each package he has sent. During the conversation, TORRES told the UC that he conducts his business in a very particular way. If he has any issues, TORRES told

3

the UC that he can have paid assassins come from Mexico to the United States to murder anyone he wants to have killed.

*March 15, 2021 Undercover Purchase with Torres Using Subject Vehicle*

On March 15, 2021, TORRES used the SUBJECT VEHICLE to meet with the UC in Lincoln, DE. TORRES sold the UC approximately 10 ounces of methamphetamine for $5,000.00 and fronted the UC approximately 6 additional ounces of methamphetamine during this same meeting (for a total of 1 pound of methamphetamine). TORRES told the UC that his shipments are sent to Wilmington, DE and Pennsylvania. During the conversation, TORRES told the UC that if the UC has an address to use, he can send the UC multiple pound shipments of methamphetamine.

*March 30, 2021 Undercover meet to look at Methamphetamine Shipment Locations Using Subject Vehicle*

8. On March 30, 2021 TORRES used the SUBJECT VEHICLE to meet the UC in person to look at two different locations the UC had selected to receive shipments of methamphetamine. After seeing the two locations in person with the UC, TORRES agreed that one of the locations would be perfect to send parcels containing methamphetamine to. TORRES told the UC that the UC can order as much methamphetamine as the UC would like. TORRES said the methamphetamine comes in kilogram quantities. TORRES said that the package will be tracked and he will let the UC know when it is about to arrive. TORRES told the UC that the UC will wait for and pick up the package. TORRES also told the UC that he always carries a firearm with him and he has a specific associate that he purchases his firearms from. TORRES told the UC if the UC needs any firearms he would put the UC in contact with his associate who sells firearms.

*April 29, 2021 Prepayment for the shipment of Methamphetamine Using SUBJECT VEHICLE*

9. On April 29, 2021, TORRES used the SUBJECT VEHICLE to meet the UC in to pick up $4,000.00 of United States Currency as prepayment for an order of methamphetamine the UC was to receive in the mail. The UC provided TORRES with the money and TORRES agreed to have the shipment of methamphetamine sent via UPS to the pre-arranged location the parties had agreed upon.

*Shipment of Methamphetamine Coordinated by TORRES and Subsequent May 7, 2021 Seizure*

10. I, along with other law enforcement, was able to track a UPS package sent from the Fresno area of California to the agreed upon shipping location. On May 7, 2021, I swore to a search warrant to search this parcel, signed by the Honorable Christopher J. Burke in the District of Delaware (No. 21-152-M). Inside the parcel was roughly 1 pound of crystal methamphetamine hidden inside several layers of packaging. The UC and TORRES had several conversations regarding pick up of the parcel, including TORRES sending the UC a screenshot of the tracking information of the parcel on May 7, which continued to say that it was on its way to the intended destination, despite it having already been seized by law enforcement and found to contain crystal methamphetamine. Ultimately, UPS marked the package as lost.

*May 18, 2021 Discussion Between UC and TORRES for 2 pound Delivery of Methamphetamine*

11. After the UC never obtained the crystal methamphetamine that the UC purchased from TORRES, the UC and TORRES began to discuss a second shipment of methamphetamine to recompense the UC for the $4,000 the UC had already paid. On May 18, 2021, TORRES and the UC had a conversation wherein TORRES told the UC that he was going to discuss with his contacts in California shipping a replacement package containing two pounds of methamphetamine and that he would let the UC know when the package was scheduled to arrive.

5

*The Subject Vehicle*

12. Based on my personal observations and information obtained from other agents and witnesses, I know that the SUBJECT VEHICLE is presently within District of Delaware. On the evening of May 19, 2021, your affiant drove by TORRES's residence in Lincoln, DE. The SUBJECT VEHICLE was parked in TORRES's driveway, as it routinely is. The SUBJECT VEHICLE is currently registered to TORRES at his home address and is the only vehicle that law enforcement has seen TORRES utilize over the course of months of surveillance. As specified above, during the period of this investigation, TORRES has utilized the SUBJECT VEHICLE on numerous occasions to transport himself to and from his drug trafficking activities. I therefore submit that tracking of the SUBJECT VEHICLE will allow investigators to identify potential stash houses of drugs, proceeds, and/or firearms that TORRES utilizes, the locations of co-conspirators residences, and drop off and pick up locations for narcotics and money.

13. In order to track the movement of the SUBJECT VEHICLE effectively and to decrease the chance of detection, I seek authorization to place a tracking device on the SUBJECT VEHICLE while it is in the District of Delaware. Because owner identified above sometimes parks the SUBJECT VEHICLE in driveways and on other private property, it may be necessary to enter onto private property and/or move the SUBJECT VEHICLE to effectuate the installation, repair, replacement, and removal of the tracking device. The private property that may need to be entered is the driveway of TORRES' residence located at ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮, DE 19960. This address has been confirmed to be TORRES' residence through an electronic database. Law Enforcement has visually seen the SUBJECT VEHICLE parked in the driveway outside TORRES' residence.

6

14. To ensure the safety of the executing officer(s) and to avoid premature disclosure of the investigation, it is requested that the court authorize installation, maintenance, and removal of the tracking device during both daytime and nighttime hours. TORRES' residence is located in an area that it is easy to see any people and/or vehicles approaching. TORRES also has cameras located on the outside of his residence. In addition, the SUBJECT VEHICLE is routinely parked in the driveway directly outside TORRES' residence. TORRES told the UC he always carries a firearm with him and has the ability to have assassins murder anyone he wants killed.

15. In the event the Court grants this application, there will be periodic monitoring of the tracking device during both daytime and nighttime hours for a period not to exceed 45 days following issuance of the warrant. The tracking device may produce signals from inside private garages or other such locations not open to the public or visual surveillance.

## AUTHORIZATION REQUEST

16. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 3117, that authorizes members of the Drug Enforcement Administration or their authorized representatives, including but not limited to other law enforcement agents and technicians assisting in the above-described investigation, to install a tracking device on the SUBJECT VEHICLE within the District of Delaware within 10 days of the issuance of the proposed warrant, to maintain, repair, and/or replace the tracking device as necessary, and to remove the tracking device from the SUBJECT VEHICLE after the use of the tracking device has ended; to install, maintain, and remove the tracking device during both daytime and nighttime hours; to surreptitiously enter the property of ▮▮▮▮▮▮▮▮▮▮ Lincoln, DE 19960 and/or move the SUBJECT

VEHICLE to effect the installation, repair, replacement, and removal of the tracking device; and to monitor the tracking device for a period of 45 days following the issuance of the warrant, including when the tracking device is inside private garages and other locations not open to the public or visual surveillance, both within and outside the District of Delaware.

17. In accordance with 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), I further request that the warrant delay notification of the execution of the warrant for 30 days after the end of the authorized period of tracking (including any extensions thereof) because there is reasonable cause to believe that providing immediate notification may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice would seriously jeopardize the ongoing investigation by prematurely revealing its existence and giving suspects an opportunity to flee from prosecution, destroy or tamper with evidence, intimidate potential witnesses, notify confederates, and change patterns of behavior.

18. I further request that the Court seal the warrant and the affidavit and application in support thereof, except that copies of the warrant in full or redacted form may be maintained by the United States Attorney's Office and may be served on Special Agents and other investigative and law enforcement officers of the Drug Enforcement Administration, federally deputized state and local law enforcement officers, and other government and contract personnel acting under the supervision of such investigative or law enforcement officers, as necessary to effectuate the warrant. These documents pertain to and discuss an ongoing criminal investigation that is neither public nor known to all the targets of the investigation.

///

19. Accordingly, I submit that there is good cause to seal these documents because their premature disclosure may seriously jeopardize the investigation. Sealing these documents will also better ensure the safety of agents and others.

Respectfully submitted,

*Christopher Thiel*

Christopher M. Thiel
Special Agent
Drug Enforcement Administration

Subscribed and sworn to telephonically in accordance with Fed. R. Crim. P. 4.1 before me on May __21__, 2021

THE HONORABLE JENNIFER L. HALL
UNITED STATES MAGISTRATE JUDGE

9